IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2022 Term

_____

No. 21-0217

_____

FILED

**November 17, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

DAKOTA JONES and MATILDA WORKMAN,
Plaintiffs Below, Petitioners,

v.

LOGAN COUNTY BOARD OF EDUCATION,
Defendant Below, Respondent.

_____

Appeal from the Circuit Court of Logan County
The Honorable Joshua Butcher
Case No. CC-23-2019-C-145

REVERSED IN PART AND REMANDED

_____

Submitted: September 27, 2022
Filed: November 17, 2022

Steven P. New, Esq.
Amanda J. Taylor, Esq.
Russell A. Williams, Esq.
New, Taylor & Associates
Beckley, West Virginia
Counsel for Petitioners
Dakota Jones and Matilda Workman

Duane J. Ruggier II, Esq.
Evan S. Olds, Esq.
PULLIN, FOWLER, FLANAGAN, BROWN &
POE, PLLC
Charleston, West Virginia
Counsel for Respondent
Logan County Board of Education

JUSTICE WALKER delivered the Opinion of the Court.


JUSTICE ARMSTEAD and JUSTICE BUNN dissent and reserve the right to file separate opinions.

1.      "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."  Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770,  461 S.E.2d 516 (1995).

2.      "'The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Syl. Pt. 3, *Chapman v. Kane Transfer Company* [160] W.Va. [530], 236 S.E.2d 207 (1977)[,] quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)." Syllabus Point 1, *John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W.Va. 603, 245 S.E.2d 157 (1978).

3.      "'Negligence is the violation of the duty of taking care under the given circumstances. It is not absolute, but is always relative to some circumstance of time, place, manner, or person.' Syl. Pt. 1, *Dicken v. Liverpool Salt & Coal Co.*, 41 W.Va. 511, 23 S.E. 582 (1895)."  Syllabus Point 7, *Strahin v. Cleavenger*, 216 W. Va. 175, 603 S.E.2d 197 (2004).

4.      "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary

man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" Syllabus Point 3, *Sewell v. Gregory*, 179 W. Va. 585, 371 S.E.2d 82 (1988).

5. "'When the facts about foreseeability as an element of duty are disputed and reasonable persons may draw different conclusions from them, two questions arise-one of law for the judge and one of fact for the jury.' Syl. Pt. 11, *Strahin v. Cleavenger*, 216 W.Va. 175, 603 S.E.2d 197 (2004)." Syllabus Point 8, *Marcus v. Staubs*, 230 W. Va. 127, 736 S.E.2d 360 (2012).

6. "'Proximate cause is a vital and an essential element of actionable negligence and must be proved to warrant a recovery in an action based on negligence.' Syllabus Point 3, *McCoy v. Cohen*, 149 W.Va. 197, 140 S.E.2d 427 (1965)." Syllabus Point 4, *Sergent v. City of Charleston*, 209 W. Va. 437, 549 S.E.2d 311 (2001).

7. "'The proximate cause of an injury is the last negligent act contributing to the injury and without which the injury would not have occurred.' Syllabus Point 5, *Hartley v. Crede*, 140 W.Va. 133, 82 S.E.2d 672 (1954), *overruled on other grounds*, *State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983)." Syllabus Point 5, *Sergent v. City of Charleston*, 209 W. Va. 437, 549 S.E.2d 311 (2001).

8. "'A tortfeasor whose negligence is a substantial factor in bringing about injuries is not relieved from liability by the intervening acts of third persons if those

acts were reasonably foreseeable by the original tortfeasor at the time of his negligent conduct.' Syl. Pt. 13, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990)." Syllabus Point 13, *Marcus v. Staubs*, 230 W. Va. 127, 736 S.E.2d 360 (2012).

9.    "'"The questions of negligence, contributory negligence, proximate cause, intervening cause and concurrent negligence are questions of fact for the jury where the evidence is conflicting or when the facts, though undisputed, are such that reasonable men draw different conclusions from them." Syl. Pt. 2, *Evans v. Farmer*, 148 W.Va. 142, 133 S.E.2d 710 (1963).' Syl. Pt. 10, *Harbaugh v. Coffinbarger*, 209 W.Va. 57, 543 S.E.2d 338 (2000)." Syllabus Point 14, *Marcus v. Staubs*, 230 W. Va. 127, 736 S.E.2d 360 (2012).

WALKER, Justice:

Dakota Jones alleges that he was severely bullied by his classmates while he was a student at Logan Middle School from 2012 to 2015. He claims that over those three years, other students cut him, choked him with a rope, punched him to the point of unconsciousness, and stabbed him with a pencil. According to Mr. Jones, school officials knew of the bullying but did nothing to stop it and, in fact, maintained that nothing could be done. Mr. Jones sued the Logan County Board of Education in 2019 for negligence under West Virginia Code § 29-12A-4(c)(2) (1986). In 2021, the circuit court concluded that he had not adequately pleaded the duty and causation elements of his negligence claim and dismissed his negligence and other claims under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.

To the contrary, we find that Mr. Jones's allegations—if taken as true and viewed in the light most favorable to him—are sufficient to permit the inference that the duty and proximate cause elements of a claim for negligence exist. For that reason, that portion of the circuit court's order dismissing Mr. Jones's claim for negligence against the Board is reversed and this case is remanded for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Jones was a sixth grader at Logan Middle School in 2012, according to the allegations in his complaint against the Board filed in 2019. On December 14, 2012,

1

fellow students wrote on Mr. Jones's body with permanent markers. The bullying was reported to Mr. Sutherland, principal of Logan Middle School. Principal Sutherland told Mr. Jones's mother, Ms. Workman, that he would address the bullying.

Mr. Jones alleges that during his seventh-grade year at Logan Middle School, a student accosted him and demanded his seat. Mr. Jones alleges that the student grabbed his notebook causing him to cut his hand. According to Mr. Jones, the school nurse attended to his injury. He alleges that during his eighth-grade year, students sprinkled pencil lead into his clothing.

Mr. Jones also claims that on September 21, 2015, another student at Logan Middle School choked him with a rope, leaving red welts on his neck. Mr. Jones alleges that a teacher accompanied him to Principal Sutherland's office, where he reported to Principal Sutherland that he had been choked. Principal Sutherland did not report the bullying to Ms. Workman.

Mr. Jones alleges that two days later, on September 23, a student was throwing pencils at him. After Mr. Jones told the other student to stop, the other student refused. Mr. Jones alleges that he, overcome with frustration, shoved the other student. The other student responded by punching Mr. Jones in the face, knocking him unconscious. Mr. Jones alleges that the school nurse called Ms. Workman, who then went to Logan

2

Middle School with her niece, Hollie Johnson. The women met with Principal Sutherland. When asked what could be done about the bullying, Principal Sutherland allegedly responded that "bullying goes on everywhere" and that there "'aren't really any laws on bullying.'"

Mr. Jones alleges that sometime later, a student stabbed him with a pencil, breaking his skin. The school nurse bandaged the wound. He claims that the school did not inform Ms. Workman of the incident. Mr. Jones alleges that his schoolmates' actions caused him to become anxious and fearful. His grades suffered, and Ms. Workman was concerned that he would kill himself.

In October 2019, Mr. Jones brought the following claims against the Board: Count I, State Constitutional Tort; Count II, Negligence; Count III, Outrage; Count IV, Assault; and Count V, Violation of Statute.[1] Mr. Jones alleged that, to the extent any of

---

[1] *See* W. Va. Code § 29-12A-4(b)(1) (1986) ("Except as provided in [West Virginia Code § 29-12A-4(c)], a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."); *Zirkle v. Elkins Rd. Pub. Serv. Dist*., 221 W. Va. 409, 414, 655 S.E.2d 155, 160 (2007) ("In creating the general grant of immunity, in *W.Va.Code,* 29–12A–4(b)(1), the Legislature did not distinguish between intentional or unintentional acts.").

his claims were subject to governmental immunity, he only sought to recover up to the limits of available insurance. He did not name any individual defendants.

The Board moved to dismiss the complaint the next month under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.[2] The Board argued that Counts III (Outrage) and IV (Assault) were subject to dismissal because political subdivisions are immune from liability for the malicious or intentional acts of their employees. The Board asserted that it was immune from liability for Counts I (State Constitutional Tort) and V (Violation of Statute) as in those claims, Mr. Jones did not seek damages caused by the negligent acts or omissions of the Board or its employees.[3] Barring that, the Board argued, it had absolute immunity from liability for Count V because Mr. Jones alleged there that the Board had violated West Virginia Code § 18-2C-3(a)[4] by failing to adopt an anti-bullying policy.[5] Finally, the Board argued that Mr. Jones had not adequately pleaded the

---

[2] West Virginia Rule of Civil Procedure 12(b)(6) allows for a motion to dismiss a claim if it "fail[s] to state a claim upon which relief can be granted."

[3] *See, e.g.*, W. Va. Code § 29-12A-4(c)(2) (stating that political subdivision may be liable for damages caused by its own negligence or the negligent acts of its employees when engaged in the scope of their employment).

[4] W. Va. Code § 18-2C-3(a) (2011) ("Each county board shall establish a policy prohibiting harassment, intimidation or bullying.").

[5] *See* W. Va. Code § 29-12A-5(a)(4) (1986) ("A political subdivision is immune from liability if a loss or claim results from . . . [a]doption or failure to adopt a law, including . . . [a] written policy.").

elements of his negligence claim considering the more demanding pleading standard imposed upon cases implicating governmental immunities.

Mr. Jones responded that the Board's motion was procedurally improper—or, at least ill-advised—considering this Court's then-recent guidance in *Doe v. Logan County Board of Education*.[6] Mr. Jones argued that even if the circuit court properly considered the Board's motion, the allegations in his complaint were sufficient to support his various claims, as they detailed the nature of the bullying, when the bullying occurred, and who knew about it. Mr. Jones also contended that this Court's cases and the facts pleaded in the complaint established that the Board operated under a duty to exercise reasonable care to protect students. Later, the court inquired whether Mr. Jones wished to engage in the heightened pleading process outlined in *Hutchison v. City of Huntington* in response to the Board's motion to dismiss.[7] Mr. Jones declined.

On February 10, 2021, the court entered an order granting the Board's motion to dismiss Mr. Jones's complaint. At the outset, the court concluded that a heightened pleading standard applied to Mr. Jones's claims because he had anticipated the Board's assertion of immunity under The Governmental Tort Claims and Insurance Reform Act

---

[6] *Doe v. Logan Cnty. Bd. of Educ.*, 242 W. Va. 45, 829 S.E.2d 45 (2019).

[7] *Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996).

(Tort Claims Act)[8] and had declined to amend his complaint in response to the Board's motion. The court adopted the Board's arguments that it was not liable for Mr. Jones's alleged injuries under § 29-12A-4(b)(1) (Counts I, III, IV) and was immune from his claim in Count V under § 29-12A-5(a)(4).

As for Count II, the circuit court concluded that Mr. Jones had offered only "a formulaic recitation of the elements" of negligence and had not identified any Board employee who was negligent. And it further concluded that Mr. Jones had failed to plead specific facts showing that the negligence of the Board or its employees caused his injuries because the bullies' actions were not foreseeable to the Board and its employees. The court reasoned that,

> Plaintiff alleges he was bullied six times spanning three years. Plaintiff has pled no facts indicating that any of these instances were foreseeable. Moreover, only in three of the six instances was a principal notified . . . . Taking these allegations as true, it is unreasonable to expect anyone to foresee when, where, and by whom Plaintiff would be bullied again if at all. Plaintiff has not pled any facts that any Board employee was aware that Plaintiff would be bullied at any particular time by any particular student in any particular location at the school. Plaintiff's negligence claim fails as a matter of law because Plaintiff has not pled facts that establish the foreseeability of his injuries. Thus, willful, malicious, or criminal acts [of the school bullies] break the chain of causation. Accordingly, Plaintiff has failed to plead a negligence claim under the Tort Claim[s] Act.

---

[8] W. Va. Code §§ 29-12A-1 to 18.

The court did not address the Board's argument that Mr. Jones had failed to plead the duty element of his negligence claim.

Mr. Jones now appeals that part of the circuit court's order dismissing his negligence claim.

## II. STANDARD OF REVIEW

"Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*."[9] On *de novo* review, the Court "give[s] a new, complete and unqualified review to the parties' arguments and the record before the circuit court."[10] "'The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' Syl. Pt. 3, *Chapman v. Kane Transfer Company* [,160] W.Va. [530], 236 S.E.2d 207 (1977)[,] quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)."[11] "In West Virginia practice, motions to dismiss are generally viewed with disfavor because the complaint is

---

[9] Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995).

[10] *Doe*, 242 W. Va. at 48, 829 S.E.2d at 48 (internal quotation omitted).

[11] Syl. Pt. 1, *John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W. Va. 603, 245 S.E.2d 157 (1978).

to be construed in the light most favorable to the plaintiff and its allegations are to be taken as true."[12] To survive a motion under Rule 12(b)(6), "'[t]he complaint must set forth enough information to outline the elements of a claim or permit inferences to be drawn that these elements exist.'"[13]

West Virginia Rules of Civil Procedure 8(a)(2) and 8(e)(1) underlie the familiar Rule 12(b)(6) standard. We have explained that,

> Rule 8 of the Rules of Civil Procedure requires clarity but not detail. Specifically, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" In addition, Rule 8(e)(1) states, in part, that "[e]ach averment of a pleading shall be simple, concise, and direct." The primary purpose of these provisions is rooted in fair notice. Under Rule 8, a complaint must be intelligibly sufficient for a circuit court or an opposing party to understand whether a valid claim is alleged and, if so, what it is.
>
> Although entitlement to relief must be shown, a plaintiff is not required to set out facts upon which the claim is based. Nevertheless, despite the allowance in Rule 8(a) that the plaintiff's statement of the claim be "short and plain," a plaintiff may not "fumble around searching for a meritorious claim within the elastic boundaries of a barebones complaint [,]" *see Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1430 (7th Cir.1993), or where the claim is not authorized by

---

[12] *Fass v. Nowsco Well Serv., Ltd.*, 177 W. Va. 50, 51, 350 S.E.2d 562, 563 (1986).

[13] *Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 521, 854 S.E.2d 870, 883 (2020) (quoting *Fass*, 177 W. Va. at 52, 350 S.E.2d at 563).

8

the laws of West Virginia. A motion to dismiss under Rule 12(b)(6) enables a circuit court to weed out unfounded suits.[14]

With those parameters established, we turn to the question of whether Mr. Jones's negligence claim was properly dismissed.

## III. ANALYSIS

Mr. Jones assigns two errors to the circuit court's order dismissing his negligence claim. First, he contends that dismissal was erroneous because the Tort Claims Act permits a party to pursue damages from a political subdivision caused by its employees' negligence while acting in the scope of their employment.[15] Second, he contends the allegations in his complaint state a negligence claim for which relief may be granted when viewed comprehensively. The Board responds that Mr. Jones's allegations of negligence do not satisfy the pleading standard called for in cases implicating Tort Claims Act immunity. The Board continues that, even if one accepts the allegations in Mr. Jones's complaint as true, they still do not establish the elements of duty and proximate cause. Mr. Jones's assignments of error present overlapping issues best analyzed together.

---

[14] *State ex rel. McGraw*, 194 W. Va. at 776, 461 S.E.2d at 522.

[15] W. Va. Code §§ 29-12A-4(c)(2) and (4).

### A. The Tort Claims Act

Our analysis starts with the Tort Claims Act because Mr. Jones has sued a "political subdivision," the Board.[16] West Virginia Code § 29-12A-4(b)(1) provides that a "political subdivision" is not liable "in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function . . . ."[17] Yet, the Legislature has maintained political subdivisions' liability for injuries "allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function," as provided in § 29-12A-4(c). That is, despite the seemingly broad language of § 29-12A-4(b)(1), a political subdivision may still face liability in the following circumstances, among others:

> (2) Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment.
>
> . . . .
>
> (4) Political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of

---

[16] W. Va. Code § 29-12A-3(c) (defining "political subdivision" to include "any . . . county board of education").

[17] *Id*. at § 29-12A-4(b); *but see Zirkle*, 221 W. Va. at 414, 655 S.E.2d at 160 ("In creating the general grant of immunity, in W.Va.Code, 29–12A–4(b)(1), the Legislature did not distinguish between intentional or unintentional acts.").

their employees and that occurs within or on the grounds of buildings that are used by such political subdivisions, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility.[18]

Stated in the general, despite § 29-12A-4(b)(1), a political subdivision may face liability for injury caused by the negligence of its employees when acting in the scope of their employment under §§ 29-12A-4(c)(2) and (4).[19]

Political subdivisions' liability for the negligence of their employees under § 29-12A-4(c) is expressly limited by § 29-12A-5.[20] West Virginia Code § 29-12A-5(a) provides that "[a] political subdivision is immune from liability if a loss or claims results from" any one of seventeen events, conditions, acts, or omissions, such as a "riot, insurrection or rebellion," "[n]atural conditions of unimproved property of the political subdivision," and the "[a]doption or failure to adopt a law . . . ."[21] Viewed in the inverse,

---

[18] W. Va. Code §§ 29-12A-4(c)(2), (4).

[19] *Cf. id*. § 29-12A-1 (stating that one purpose of the Tort Claims Act is "to *limit liability* of political subdivisions") (emphasis added).

[20] Liability under § 29-12A-4(c) is also subject to § 29-12A-6. The limitations in § 29-12A-6 are not at issue, here.

[21] W. Va. Code §§ 29-12A-5(a)(5), (7), and (4); *see, e.g.*, Syl. Pt. 5, *Hose v. Berkeley Cnty. Planning Comm'n*, 194 W. Va. 515, 460 S.E.2d 761 (1995) ("W.Va.Code, 29–12A–5(a)(9) [1986] clearly contemplates immunity for political subdivisions from tort liability for any loss or claim resulting from licensing powers or functions . . . ."). West Virginia Code § 29-12A-5(b) provides immunity from liability to employees of a political

11

a political subdivision may be liable for injury caused by the negligence of its employees when acting in the scope of their employment under § 29-12A-4(c) unless the political subdivision is immunized from liability for that loss or claim as provided in § 29-12A-5(a).

"Immunities under West Virginia law are more than a defense to a suit in that they grant governmental bodies and public officials the right not to be subject to the burden of trial at all."[22] This is why "[a]n assertion of qualified or absolute immunity should be heard and resolved prior to any trial because, if the claim of immunity is proper and valid, the very thing from which the defendant is immune—a trial—will absent a pretrial ruling occur and cannot be remedied by a later appeal."[23] "[U]nless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition."[24]

Despite the preference for early consideration of assertions of immunity, "[a] plaintiff is not required to anticipate the defense of immunity in his complaint."[25] Yet,

---

subdivision, subject to three exceptions that are not relevant, here, because Mr. Jones pursues damages from the Board, not an individual employee.

[22] *Hutchison*, 198 W. Va. at 148, 479 S.E.2d at 658.

[23] *Id*. at 149 n.13, 479 S.E.2d at 659 n.13.

[24] Syl. Pt. 1, in part, *id*. at 139, 479 S.E.2d at 649.

[25] *Id*. at 150, 479 S.E.2d at 660 (citing *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980)).

"[p]ublic officials and local government units should be entitled to . . . statutory immunity under W. Va.Code, 29–12A–5(a), unless it is shown by specific allegations that the immunity does not apply."[26] We have outlined a heightened pleading process[27] to bridge the gaps between the notice-pleading standard,[28] a political subdivision's need "to ascertain whether it has an immunity defense" early in the proceedings,[29] and the onus placed on the plaintiff to respond to a political subdivision's assertion of immunity under § 29-12A-5(a).[30] We have pointed to procedural mechanisms a court may employ once a

---

[26] *Id.* at 147–48, 479 S.E.2d at 657–58.

[27] *See Kelley v. City of Williamson,* 221 W. Va. 506, 511, 655 S.E.2d 528, 533 (2007) ("The methodology for addressing these threshold immunity questions was provided by this Court in *Hutchison v. City of Huntington*, 198 W.Va. 139, 479 S.E.2d 649 (1996)."); *Zirkle*, 221 W. Va. at 412, 414, 655 S.E.2d at 158, 160 (stating that [t]he trial court, however, required the parties to file a 'short and plain statement' tailored to the defense of qualified or statutory immunity" and "made its findings following the 'heightened pleading' *procedures* set forth in *Hutchison v. City of Huntington*." (emphasis added)).

[28] *See* W. Va. R. Civ. P. 8(a) (requiring a pleading setting "forth a claim for relief" to "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); *id.* 8(e)(e)(1) ("Each averment of a pleading shall be simple, concise, and direct."); *id.* 9(b) ("Negligence may be averred generally.").

[29] *Doe*, 242 W. Va. at 49, 51, 829 S.E.2d at 49, 51 (where a board of education represented that it "may have statutory immunity from [student's] negligence claims," reversing dismissal order and remanding case to the circuit court to obtain additional pleading from student "such that the [b]oard can ascertain whether it has an immunity defense").

[30] *Hutchison*, 198 W. Va. at 147−48, 479 S.E.2d at 657−58 ("Public officials and local government units should be entitled to . . . statutory immunity under W. Va.Code, 29–12A–5(a), unless it is shown by *specific allegations* that the immunity does not apply." (emphasis added)).

13

defendant invokes immunity under § 29-12A-5(a) to permit a plaintiff to put forth whatever specific allegations he may have that tend to show that the political subdivision is not immune from his claim.  In *Doe*, we explained that:

> [p]ursuant to Rule 12(e) of the Rules of Civil Procedure, the trial court may require the plaintiff to file a more definite statement. Pursuant to Rule 7(a) of these same Rules, the trial court may require the plaintiff to file a reply to the defendant's answer. In addition, we observe that pursuant to Rule 15(a) of the Rules of Civil Procedure, a trial court may grant the plaintiff leave to amend the complaint. "Leave to amend should be freely given when justice so requires . . . ." Syl. Pt. 6, in part, *Perdue v. S.J. Groves & Sons Co.*, 152 W.Va. 222, 161 S.E.2d 250 (1968). Finally, if a plaintiff believes that discovery is necessary to oppose a motion to dismiss, the plaintiff may request discovery pursuant to Rule 56(f) of the Rules of Civil Procedure.[31]

And we have also recognized that this process is not called for in every case involving an assertion of immunity under §29-12A-5(a); where "the individual circumstances of the case indicate that the plaintiff has pleaded his or her best case, there is no need to order more detailed pleadings."[32]  Finally, while early resolution of the assertion of immunity under § 29-12A-5(a) may ultimately be appropriate, "[i]f the

---

[31] *Doe*, 242 W. Va. at 50, 829 S.E.2d at 50.

[32] *Hutchison*, 198 W. Va. at 150, 479 S.E.2d at 660.

14

information contained in the pleadings is sufficient to justify the case proceeding further, the early motion to dismiss should be denied."[33]

### B. Mr. Jones's Negligence Claim

This brings us back to Mr. Jones's negligence claim against the Board. The Board did not assert immunity from the claim under § 29-12A-5(a) before the circuit court. Barring assertion of such immunity, the Board may be held liable in negligence under §§ 29-12A-4(c)(2) and (4). Mr. Jones's negligence claim fits neatly within those subparts. Broadly, Mr. Jones alleges that he was injured by the negligence of the Board's employees—not their intentional acts. The facts alleged in Mr. Jones's complaint also permit the reasonable inference that those injuries resulted from Board employees' alleged negligence occurring on school grounds, again, not their intentional acts.

The question becomes whether Mr. Jones has stated a negligence claim for which relief may be granted. That is, does his complaint include a "short and plain statement of the claim showing that [he] is entitled to relief?"[34] As we stated in *Wheeling Park Commission v. Dattoli*,

> [t]he standard for liability set forth in W. Va. Code § 29–12A–4(c) is, by its plain terms, a negligence standard. In other words, for a plaintiff to prevail in a claim brought against a

---

[33] *Id*.

[34] W. Va. R. Civ. P. 8(a).

15

political subdivision under W. Va. Code § 29–12A–4(c), the plaintiff still must prove the elements of negligence.[35]

So, to survive the Board's motion to dismiss, Mr. Jones was "required to aver the elements of a negligence cause of action."[36]

To succeed on his negligence claim, a plaintiff must establish by the preponderance of the evidence that the defendant owes him a duty, that there was a negligent breach of that duty, and that injuries received by the plaintiff resulted proximately from the breach of the duty.[37] More succinctly, "[i]n order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff."[38] Finally, we have held that "'[n]egligence is the violation of the duty of taking care under the given circumstances. It

---

[35] *Wheeling Park Comm'n v. Dattoli*, 237 W. Va. 275, 281, 787 S.E.2d 546, 552 (2016).

[36] *C.C. v. Harrison Cnty. Bd. of Educ.*, 245 W. Va. 594, 603, 859 S.E.2d 762, 771 (2021).

[37] *See Webb v. Brown & Williamson Tobacco Co.*, 121 W. Va. 115, 118, 2 S.E.2d 898, 899 (1939).

[38] Syl. Pt. 1, in part, *Parsley v. Gen. Motors Acceptance Corp.*, 167 W. Va. 866, 280 S.E.2d 703 (1981).

is not absolute, but is always relative to some circumstance of time, place, manner, or person.'"[39]

The focus, here, is the sufficiency of Mr. Jones's allegations supporting the duty and causation elements of his negligence claim. We address these elements in turn. Mr. Jones asserts that he has alleged facts sufficient to demonstrate that it was foreseeable, or should have been foreseeable, to Board employees that students at Logan Middle School would bully him, causing injury, with particular emphasis on the episode of September 23, 2015. According to Mr. Jones, "[t]hese foreseeable harmful events are exactly the dangers that Respondent Board and its employees had a duty to prevent." The Board responds that it had no duty to prevent the specific instances of bullying alleged by Mr. Jones because "it is unreasonable to expect anyone to foresee when, where, and by whom [Mr. Jones] would be bullied again if at all."

Regarding the duty element, we have held that

> [t]he ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have

---

[39] Syl. Pt. 7, *Strahin v. Cleavenger*, 216 W. Va. 175, 603 S.E.2d 197 (2004) (quoting Syl. Pt. 1, *Dicken v. Liverpool Salt & Coal Co.,* 41 W. Va. 511, 23 S.E. 582 (1895)).

known, anticipate that harm of the general nature of that suffered was likely to result?[40]

"[T]he determination of whether a plaintiff is owed a duty of care by a defendant must be rendered by the court as a matter of law,"[41] but we have also recognized that the duty determination may depend, in part, on the resolution of factual questions, particularly questions of foreseeability. To that end, "'[w]hen the facts about foreseeability as an element of duty are disputed and reasonable persons may draw different conclusions from them, two questions arise-one of law for the judge and one of fact for the jury.'"[42]

In this case, Mr. Jones alleges that he was injured by school bullies, that is, parties other than the Board. The general rule is that

> a person does not have a duty to protect others from the deliberate criminal conduct of third parties. . . . Normally a person has much less reason to anticipate intentional misconduct than he has to anticipate negligence. . . . In other words, a person usually has no duty to protect others from the criminal activity of a third party because the foreseeability of risk is slight, and because of social and economic consequences of placing such a duty on a person.[43]

---

[40] Syl. Pt. 3, *Sewell v. Gregory*, 179 W. Va. 585, 371 S.E.2d 82 (1988).

[41] Syl. Pt. 5, in part, *Aikens v. Debow,* 208 W. Va. 486, 541 S.E.2d 576 (2000).

[42] Syl. Pt. 8, *Marcus v. Staubs*, 230 W. Va. 127, 736 S.E.2d 360 (2012) (quoting Syl. Pt. 11, *Strahin*, 216 W. Va. at 175, 603 S.E.2d at 197).

[43] *Miller v. Whitworth*, 193 W. Va. 262, 266, 455 S.E.2d 821, 825 (1995) (internal quotations, citations, and alterations omitted).

18

But that rule is not absolute. Exceptions may arise, such as "when the person's affirmative actions or omissions have exposed another to a foreseeable high risk of harm from the intentional misconduct."[44]

Our concern here is whether the factual allegations in Mr. Jones's complaint permit the inference that the duty element of his negligence claim exists. We conclude that they do. Mr. Jones alleges that students at Logan Middle School bullied him multiple times. To summarize these allegations, on December 14, 2012, students wrote on his body in permanent ink; in 2013, a fellow student accosted him and cut his hand; in 2014, students sprinkled lead into his clothing; on September 21, 2015, a fellow student choked him; and on September 23, 2015, a fellow student punched him unconscious. Later, another student stabbed him with a pencil. Mr. Jones alleges that Board employees knew of these incidents and the injuries that allegedly resulted. He alleges that he told Principal Sutherland about the 2012 incident. He alleges that the school nurse attended his cut hand in 2013. He alleges that he reported to Principal Sutherland that fellow students choked and punched

---

[44] *See id*. (citing RESTATEMENT (SECOND) OF TORTS §§ 302B cmt. e and 315); *cf. Est. of Hough ex rel. Lemaster v. Est. of Hough ex rel. Berkeley Cnty. Sheriff*, 205 W. Va. 537, 544, 519 S.E.2d 640, 647 (1999) (in *Miller*, this Court "stated that a landlord has a duty to protect a tenant from the criminal activity of a third party if the landlord's affirmative actions or omissions unreasonably created or increased the risk of injury to the tenant from the criminal activity of a third party").

him. Finally, Mr. Jones alleges that the school nurse treated him after he was stabbed with a pencil.

Viewed in whole, Mr. Jones's allegations support the inference that at least two Board employees—Principal Sutherland and the school nurse—knew that the willful, malicious acts of third parties presented a risk of harm to Mr. Jones. That is, those employees knew that students at Logan Middle School had bullied Mr. Jones at least twice and injured him once. Mr. Jones's allegations also support the inference that as of September 21, 2015, Principal Sutherland knew or should have known that certain students at Logan Middle School presented a *high* risk of harm to Mr. Jones because Principal Sutherland then knew Mr. Jones had been choked by another student—a far more serious act than the prior alleged instances of bullying. Mr. Jones alleges that Principal Sutherland failed to notify Ms. Workman of the choking incident, an allegation that supports the inference that Principal Sutherland failed to take other action in response to Mr. Jones's report. Further, Mr. Jones alleges that Principal Sutherland told Ms. Workman that he would address the bullying, albeit in 2012. Mr. Jones also alleges that the Board has adopted a Student Code of Conduct addressing bullying and harassment.[45] Taken in Mr.

---

[45] Mr. Jones's complaint is not a model of clarity. In paragraph 58 of his complaint, in support of his claim entitled, "Violation of Statute," Mr. Jones alleges that the Board's "actions or inactions were in violation of West Virginia Code § 18-2C-23 in that Logan County Schools have adopted a Student Code of Conduct addressing bullying and harassment . . . ." Mr. Jones has not appealed dismissal of his claim for "Violation of Statute." The factual allegation remains that the Board has adopted a Student Code of Conduct pursuant to West Virginia Code § 18-2C-3—a factual allegation supportive of the

Jones's favor, those allegations support the inference that Principal Sutherland knew or should have known that a report of bullying may require a response from school administrators.

Again, a person does not generally owe a duty to protect another from the willful, malicious acts of a third party, but a duty may arise "when the person's affirmative actions or *omissions* have exposed another to a foreseeable high risk of harm from the intentional misconduct."[46]  Taking the allegations in Mr. Jones's complaint as true and making all inferences in his favor, Principal Sutherland owed Mr. Jones a duty of protection and/or supervision following the September 21, 2015 choking episode because it was or should have been foreseeable to him that his affirmative inaction would expose Mr. Jones to the high risk of harm posed by the intentional misconduct of school bullies.  For those reasons, we conclude that Mr. Jones has sufficiently alleged the duty element of a negligence cause of action.

We decline Mr. Jones's apparent invitation to read our prior cases as imposing upon boards of education and their employees an absolute duty to prevent all instances of bullying on school grounds.  Here, we merely conclude that Mr. Jones has

---

inference that Board employees knew or should have known that Mr. Jones's report of escalated bullying may require responsive action.

[46] *Miller*, 193 W. Va. at 266, 455 S.E.2d at 825 (emphasis added).

sufficiently alleged the duty element of a negligence claim based on the factual allegations of his complaint. That conclusion comports with our holding that "'[n]egligence is the violation of the duty of taking care under the given circumstances. It is not absolute, but is always relative to some circumstance of time, place, manner, or person.'"[47]

Next, we turn to proximate cause. The Board argues that Mr. Jones has not sufficiently alleged the proximate cause element of his negligence claim. "'Proximate cause is a vital and an essential element of actionable negligence and must be proved to warrant a recovery in an action based on negligence.'"[48] It is "'the last negligent act

---

[47] *See, e.g.*, *Bd. of Educ. of Cnty. of Gilmer v. Chaddock*, 183 W. Va. 638, 641, 398 S.E.2d 120, 123 (1990) (board of education arbitrarily and capriciously dismissed teacher where teacher did not violate duty of reasonable care by failing to remove student in possession of a firearm from classroom in the absence of an applicable school policy and when teacher's experience with the student indicated that student did not present a threat to classmates so long as the student remained calm); *Gring v. Harrison Cnty. Bd. of Educ.*, No. 14-0248, 2014 WL 6607668, at *2 (W. Va. Nov. 21, 2014) (memorandum decision) (finding circuit court did not err by applying duty of reasonable care standard to teacher's allegedly negligent supervision of student at parade, rather than a heightened duty *in loco parentis*). *But see Goodwin v. Bd. of Educ. of Fayette Cnty.*, 242 W. Va. 322, 331, 835 S.E.2d 566, 575 (2019) (stating in dicta that "[u]nder the *in loco parentis* doctrine 'schools share a special relationship with students entrusted to their care, which imposes upon them certain duties of reasonable supervision.'") (quoting *Doe*, 242 W. Va. at 52, 829 S.E.2d at 52) (Workman, J. concurring) (internal quotation marks and citation omitted)).

[48] Syl. Pt. 4, *Sergent v. City of Charleston*, 209 W. Va. 437, 549 S.E.2d 311 (2001) (quoting Syl. Pt. 3, *McCoy v. Cohen,* 149 W. Va. 197, 140 S.E.2d 427 (1965)).

contributing to the injury and without which the injury would not have occurred.'"[49] While "[g]enerally, a willful, malicious, or criminal act breaks the chain of causation"[50] we have held that "'[a] tortfeasor whose negligence is a substantial factor in bringing about injuries is not relieved from liability by the intervening acts of third persons if those acts were reasonably foreseeable by the original tortfeasor at the time of his negligent conduct.'"[51]

The Board restates the conclusions of the circuit court on this point, that Board employees could not have foreseen any particular instances of bullying and that the actions of the student-bullies were the superseding cause of Mr. Jones's injuries. Mr. Jones responds that he has alleged that Board employees did not respond to his reports of bullying, even though, in one instance, a Board employee (Principal Sutherland) told Mr. Jones's mother the bullying would be addressed. According to Mr. Jones, that inaction harmed him because it unreasonably created or increased the risk of injury posed to him by the bullying of other students.

---

[49] Syl. Pt. 5, *Sergent*, 209 W. Va. at 437, 549 S.E.2d at 311 (quoting Syl. Pt. 5, *Hartley v. Crede*, 140 W. Va. 133, 82 S.E.2d 672 (1954), *overruled on other grounds, State v. Kopa,* 173 W. Va. 43, 311 S.E.2d 412 (1983)).

[50] *Yourtee v. Hubbard*, 196 W. Va. 683, 690, 474 S.E.2d 613, 620 (1996) (citation omitted).

[51] Syl. Pt. 13, *Marcus*, 230 W. Va. at 127, 736 S.E.2d at 360 (quoting Syl. Pt. 13, *Anderson v. Moulder*, 183 W. Va. 77, 394 S.E.2d 61 (1990)).

23

Upon a close review of Mr. Jones's complaint, we conclude that it contains specific allegations that permit the inference that the proximate cause element of his negligence claim exists. As previously stated, Mr. Jones alleges that at least one employee of the Board, Principal Sutherland, knew that Mr. Jones was being bullied since December 2012. Mr. Jones has alleged that another student choked him with a rope on September 21, 2015, and that he did so with enough force to leave red welts on Mr. Jones's neck. And he has alleged that, although he reported that attack to Principal Sutherland, Principal Sutherland did not notify Ms. Workman. Days later, a fellow student attacked Mr. Jones, again. Taking those allegations as true and making all inferences in Mr. Jones's favor, the malicious acts of Mr. Jones's fellow students do not cut off the Board's liability; a reasonable juror could conclude that it was reasonably foreseeable to at least one Board employee, Principal Sutherland, that Mr. Jones's classmates would continue to bully and physically injure Mr. Jones. Further,

> "'The questions of negligence, contributory negligence, proximate cause, intervening cause and concurrent negligence are questions of fact for the jury where the evidence is conflicting or when the facts, though undisputed, are such that reasonable men draw different conclusions from them.' Syl. Pt. 2, *Evans v. Farmer*, 148 W.Va. 142, 133 S.E.2d 710 (1963)."[52]

---

[52] Syl. Pt. 14, *Marcus*, 230 W. Va. at 127, 736 S.E.2d at 360 (quoting Syl. Pt. 10, *Harbaugh v. Coffinbarger*, 209 W. Va. 57, 543 S.E.2d 338 (2000)).

For that reason, and in view of the specific allegations contained in Mr. Jones's complaint, we conclude that the circuit court erred when it found that Mr. Jones has failed to state a claim for negligence against the Board for which relief could be granted.

## IV. CONCLUSION

For the reasons discussed above, we reverse that part of the circuit court's order of February 10, 2021, dismissing Mr. Jones's negligence claim and remand this case to the circuit court for further proceedings.

Reversed in part and remanded.